Opinion filed May 20, 2010

 

 

 

                                                                       In The

                                                                              

  Eleventh
Court of Appeals

                                                                   __________

 

                                                         No. 11-08-00157-CR 

                                                    __________

 

                             JOHN
MICHAEL GATELY, Appellant

                                                             V.

                                      STATE
OF TEXAS, Appellee



 

                                   On
Appeal from the 35th District Court

                                                           Brown
County, Texas

                                                   Trial
Court Cause No. CR19181

 



 

                                                                  O
P I N I O N

            The
jury convicted John Michael Gately of possession of methamphetamine with the
intent to deliver in the amount of four grams or more but less than two hundred
grams.  Appellant pleaded true to an enhancement allegation, and the jury
assessed his punishment at ninety-nine years confinement and a fine of
$10,000.  The trial court sentenced him accordingly.  Appellant presents seven
issues for review.  We affirm.

Background


            Detective
Bruce Spruill, a narcotics investigator for the Brownwood Police Department,
received information from a confidential informant that appellant was
transporting methamphetamine from the Metroplex to Brownwood.  Detective
Spruill set up a covert operation to observe appellant.  After receiving
information that appellant would be delivering drugs to Brownwood on April 11,
2007, Detective Spruill conducted surveillance of an apartment in Brownwood. 
At that time, Detective Spruill observed appellant get into the passenger’s
side of a white, Toyota Scion.  Police officers stopped the vehicle.  John Phy
was driving the vehicle, and appellant was a passenger in the vehicle.  Detective
Spruill obtained Phy’s consent to search the vehicle.  During the search, the
officers found over twenty-nine grams of methamphetamine in between the
driver’s seat and a console.

            Appellant
does not challenge the sufficiency of the evidence to support his conviction.  We
have reviewed the evidence in its entirety.  The State presented overwhelming
evidence of appellant’s guilt.

Denial
of Challenge for Cause

            In
his first issue, appellant argues that the trial court erred in failing to
excuse a veniremember for cause.  Appellant challenged Veniremember Robert Northcutt
for cause.  The trial court denied appellant’s challenge.  Appellant did not
use a peremptory strike on Northcutt.  Rather, appellant used his peremptory
strikes on other veniremembers and then requested an additional peremptory
strike for the purpose of striking Northcutt.  The trial court denied
appellant’s request for an additional strike, and Northcutt served on the jury.

            To
preserve error on a trial court’s denial of a challenge for cause, an appellant
must take the following steps: (1) assert a clear and specific challenge for
cause; (2) use a peremptory strike on the complained-of veniremember; (3)
exhaust his peremptory strikes; (4) request additional peremptory strikes; (5)
identify an objectionable juror; and (6) claim that he would have struck the
objectionable juror with a peremptory strike if he had one to use.  Allen v.
State, 108 S.W.3d 281, 282 (Tex. Crim. App. 2003).  Because appellant did
not use a peremptory strike on Northcutt, appellant failed to preserve error on
his first issue.  Appellant’s first issue is overruled.

Recorded
Statement of Phy

            Appellant
contends in his second issue that the trial court erred in admitting the
statement of Phy, a codefendant.  The stop of the vehicle was recorded by
equipment in Brownwood Police Officer John C. Harper’s patrol vehicle.  During
Officer Harper’s testimony, the State sought to introduce into evidence the DVD
of the stop.  The DVD lasts over an hour.  During the vast majority of time,
the DVD is silent.  However, the DVD includes a few statements made by Phy
about the methamphetamine that the officers found in the car.  Phy stated,
“It’s not my dope.  He’s the dealer.”  Phy also stated, “I can tell you people
where it’s going to.”  Appellant objected to the admissibility of Phy’s statements
on the ground of hearsay.  The trial court admitted the DVD over appellant’s
objection.  The DVD was not played for the jury when the trial court admitted
it into evidence.

            We
note that the record is not clear as to whether the jury watched the DVD of the
stop.  During jury deliberations, the jury sent the trial court a note asking
whether it could see the DVD of the stop.  The trial court suggested sending a
laptop into the jury room so that the jurors could watch the DVD.  Neither
party objected to the trial court’s suggestion.  The record shows that this
discussion occurred at 1:22 p.m.  At 2:08 p.m., the trial court announced that
the jury had reached a verdict.  The jury could not have watched the entire DVD
during this forty-six minute time period.  However, for the purposes of
addressing appellant’s issue, we will assume that the jury watched the portions
of the DVD containing Phy’s statements.

            Phy
testified at trial.  Phy said that he agreed to drive appellant to Brownwood. 
Phy said that, in exchange for the ride to Brownwood, appellant promised to
give him gas and cigarettes.  Phy testified that appellant hid drugs in the car
before they left for Brownwood.  He testified that the drugs were about the
size of a softball.  Phy believed that the drugs were methamphetamine. He
testified that, when they were about halfway to Brownwood, appellant retrieved
the drugs and started handling them inside the car.  Phy said that, when they
arrived in Brownwood, he drove to a house and appellant got out of the car. 
Phy testified that appellant took the drugs with him and then got into a maroon,
Chevrolet van with a woman.  Phy said that he followed the van to an apartment
complex and then waited outside for appellant.  He said that appellant returned
to the car and that they left the apartment complex.  Phy testified that the
police surrounded them and pulled them over.  According to Phy, appellant said,
“We’re going to prison for a long time.”   Phy testified that appellant shoved
the drugs between the seats.  Phy said that he gave a police officer consent to
search the car.

            Even
if the trial court erred in admitting the portions of the DVD containing Phy’s
statements, appellant would not be entitled to a reversal of his conviction
unless the error constituted reversible error under Rule 44.2 of the Rules of
Appellate Procedure.  Tex. R. App. P. 44.2. 
A violation of the evidentiary rules resulting in the erroneous admission of
evidence is nonconstitutional error and is, therefore, subject to a harm
analysis under Rule 44.2(b). Motilla v. State, 78 S.W.3d 352, 355 (Tex.
Crim. App. 2002); Johnson v. State, 967 S.W.2d 410, 417 (Tex. Crim. App.
1998).  Under Rule 44.2(b), we are to disregard any error unless it affected
appellant’s substantial rights.  A substantial right is affected when the error
had a substantial and injurious effect or influence on the jury’s verdict.  King
v. State, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997).

            Phy’s
statements on the DVD were consistent with his trial testimony.  In fact, Phy’s
trial testimony provided much more detail than his statements on the DVD.  The
admission of Phy’s statements on the DVD was harmless because those statements
were cumulative of his trial testimony.  Couchman v. State, 3 S.W.3d
155, 160 (Tex. App.—Fort Worth 1999, pet. ref’d); see Anderson v. State,
717 S.W.2d 622, 628 (Tex. Crim. App. 1986).  Under these circumstances, the
error, if any, in admitting the DVD was harmless.  Appellant’s second issue is
overruled.

Recorded
Statement of Appellant

            In
his third issue, appellant complains that the trial court erred in admitting
his recorded statement.  Detective Spruill took the recorded statement from
appellant.  Appellant objected to the admissibility of the statement on the
ground that he did not knowingly, intelligently, and voluntarily waive his
right to counsel before providing the statement.  The trial court admitted the
statement, and it was played for the jury.  The recording of appellant’s
statement establishes that, before appellant gave his statement, Detective
Spruill gave appellant the warnings required by Miranda v. Arizona, 384
U.S. 436 (1966), and Tex. Code Crim.
Proc. Ann. art. 38.22 (Vernon 2005), including the warning that
appellant had the right to have a lawyer present to advise him prior to and
during any questioning.  Appellant acknowledged in the trial court that
Detective Spruill gave him the necessary warnings.  However, appellant argued
that the statement was inadmissible because he did not expressly waive his
right to counsel.

            Neither
a written nor an oral express waiver is required to support a finding that an accused
waived his Miranda rights.  Joseph v. State, No. PD-1111-08, 2010
WL 625072, at *3 (Tex. Crim. App. 2010); Watson v. State, 762 S.W.2d
591, 601 (Tex. Crim. App. 1988).  A valid waiver will not be presumed simply
from the silence of the accused after warnings are given or simply from the
fact that a confession was in fact eventually obtained.  Miranda, 384
U.S. at 475.  However, a waiver need not assume a particular form, and in some
cases, a “waiver can be clearly inferred from the actions and words of the
person interrogated.”  Joseph, 2010 WL 625072, at *3 (quoting North
Carolina v. Butler, 441 U.S. 369, 373 (1979)).  The question is not whether
an accused “explicitly” waived his Miranda rights, but whether he did so
knowingly, intelligently, and voluntarily.  Joseph, 2010 WL 625072, at *3. 
Whether an accused waived his Miranda rights is determined from the
totality of the circumstances.  Id.; Castillo v. State, 616
S.W.2d 620, 622 (Tex. Crim. App. 1981); Turner v. State, 252 S.W.3d 571,
583 (Tex. App.—Houston [14th Dist.] 2008, pet. ref’d).

            After
Detective Spruill advised appellant of his rights, Detective Spruill asked
appellant, “Do you understand your rights?”  Appellant responded, “Yes, sir.” 
Detective Spruill also asked appellant whether he had any questions about his
rights, and appellant responded, “No, sir.”  Detective Spruill then asked
appellant, “Do you want to talk to me?”  Appellant responded, “I would like to
talk to you.”  Appellant told Detective Spruill that “[his] head [was] pounding,”
but appellant continued the interview.  Later, appellant said, “I’m willing to
help wherever I can.” Following this statement, appellant said, “Right now my
head is banging.”  However, appellant again continued the interview.

            Although
appellant never expressly waived his rights, appellant willingly participated
in the interview.  Based on the totality of the circumstances, a waiver can
clearly be inferred from appellant’s words and actions.  The recorded interview
establishes that appellant knowingly, intelligently, and voluntarily waived his
rights.  Appellant’s third issue is overruled.

            In
his seventh issue, appellant contends that the trial court erred in admitting
evidence that he exercised his constitutional right to terminate the interview. 
About seventeen minutes into the interview, appellant stated, “I’ve been
bullshitting.”  He also stated, “I want to be straight forward.”  He requested
Detective Spruill to do the interview the next day.  Detective Spruill
said that he could not guarantee that he could talk with appellant the next
day.  Later, appellant again said that his head was pounding.  Detective
Spruill said “okay” and concluded the interview.

            Detective
Spruill testified that, at some point, appellant requested to cease the
interview and that he ceased it upon appellant’s request.  Appellant objected
to Detective Spruill’s testimony on the ground that it was an improper comment
on his right to terminate the interview.   Evidence of the invocation of the constitutional
right to terminate an interview is inadmissible.  Cooper v. State, 961
S.W.2d 222, 226 (Tex. App.—Houston [1st Dist.] 1997, pet. ref’d).  The State
may not inform the jury that the accused invoked his constitutional rights
because the jury may improperly consider the invocation as an inference of
guilt.  Hardie v. State, 807 S.W.2d 319, 322 (Tex. Crim. App. 1991).  

            Appellant’s
recorded interview does not indicate that he was invoking his constitutional
right to terminate the interview.  A police officer need not stop questioning a
suspect unless the suspect’s invocation of rights is unambiguous.  Ramos v.
State, 245 S.W.3d 410, 418 (Tex. Crim. App. 2008); Dowthitt v. State,
931 S.W.2d 244, 257 (Tex. Crim. App. 1996).  The officer is not required to
clarify ambiguous remarks.  Ramos, 245 S.W.3d at 418; Dowthitt,
931 S.W.2d at 257.  In Dowthitt, the accused stated the following during
a statement: “I can’t say more than that. I need to rest.”  The Court of
Criminal Appeals held that these statements were not an unambiguous invocation
of the right to remain silent.  Dowthitt, 931 S.W.2d at 257.  Likewise,
appellant did not unambiguously invoke his right to terminate the interview. 
At most, the recorded statement indicates that appellant wanted to stop the
interview for the day because his head was pounding and then continue the
interview the next day.  Because appellant did not exercise his constitutional
right to terminate the interview, Detective Spruill’s testimony was not
improper.  Appellant’s seventh issue is overruled.

Trial
Court’s Statements to Witness 

            In
his fourth issue, appellant asserts that the trial court erred in causing Ruben
Gonzales Jr. to testify under duress.  Gonzales and appellant were former cellmates.
 The State called Gonzales as a witness.  He immediately informed the trial
court that he did not want to testify.   The trial court excused the jury and
addressed the issue.  Gonzales had pleaded guilty to a felony.  As part of the
plea agreement, Gonzales had agreed to testify in appellant’s case.  The trial
court admonished Gonzales of the potential consequences of his failure to
testify.  The trial court also appointed counsel to advise Gonzales of his
rights.  The prosecutor questioned Gonzales outside of the jury’s presence.  Gonzales’s
court-appointed attorney was present during this questioning.  The trial
resumed the next morning.  Gonzales’s attorney was present in court.  In
response to questioning by the prosecutor, Gonzales said that he had decided to
testify. Gonzales then testified before the jury.

            The
record does not support appellant’s argument that the trial court improperly
caused Gonzales to testify.  The trial court appointed counsel for Gonzales. 
The record demonstrates that Gonzales voluntarily testified.  We note that Gonzales
never invoked his Fifth Amendment right against self-incrimination.  Instead,
he apparently did not want to testify because he was concerned about the way he
might be treated in prison if he did.  However, for the purposes of our
analysis, we will assume that Gonzales’s testimony was sufficient to invoke his
right against self-incrimination.  If a witness invokes his right against
self-incrimination, the trial court cannot compel him to answer the question unless
it is perfectly clear, from a careful consideration of all the circumstances in
the case, that he is mistaken in asserting the privilege and that the answer
cannot possibly tend to incriminate him.  Grayson v. State, 684 S.W.2d
691, 696 (Tex. Crim. App. 1984); Boler v. State, 177 S.W.3d 366, 371
(Tex. App.—Houston [1st Dist.] 2005, pet. ref’d).  In this case, the prosecutor
did not ask Gonzales any incriminating questions, and Gonzales’s answers to the
prosecutor’s questions did not incriminate him.  Therefore, assuming that
Gonzales invoked his right against self-incrimination, the trial court properly
compelled him to testify.  In addition, appellant has not provided this court
with any authority demonstrating that he has a right to complain about an
alleged violation of Gonzales’s right against self-incrimination.  Appellant’s
fourth issue is overruled.

Prosecutor’s
Statements During Jury Arguments

            In
his fifth issue, appellant asserts that the trial court erred in allowing the
prosecutor to comment on his failure to testify during jury arguments in the
guilt/innocence phase and the punishment phase.  A comment on a defendant’s
failure to testify offends the Texas and United States Constitutions, as well
as Texas statutory law.  U.S. Const.
amend. V; Tex. Const. art. I, §
10; Tex. Code Crim. Proc. Ann. art.
38.08 (Vernon 2005).  A prosecutor’s comment amounts to an impermissible
comment on a defendant’s failure to testify only if, when viewed from the
jury’s standpoint, the comment is manifestly intended to be, or is of such
character that a typical jury would naturally and necessarily take it to be, a
comment on the defendant’s failure to testify.  Cruz v. State, 225
S.W.3d 546, 548 (Tex. Crim. App. 2007); Bustamante v. State, 48 S.W.3d
761, 765 (Tex. Crim. App. 2001).

            During
jury argument in the guilt/innocence phase, the prosecutor argued that the
confidential informant had received about two grams of methamphetamine from
appellant.  Dennis Mason Arial was the confidential informant.  He testified at
trial.  Arial said that appellant gave him methamphetamine and that he later
gave it to Detective Spruill.  Detective Spruill testified that Arial gave
him methamphetamine.  The prosecutor stated in his argument that “[t]here is
nothing to controvert the testimony of Mr. Arial, that that is where he got the
drugs from.”  Appellant contends that this statement was a comment on his
failure to testify.  However, viewed in context, the prosecutor’s statement
appears to refer to a lack of evidence that Arial obtained the methamphetamine
after he left appellant’s presence and was not a comment on appellant’s failure
to testify.  This conclusion is evidenced by the prosecutor’s argument
immediately before the above-quoted statement:  

 So, from there,
[appellant] remains and Mr. Arial departs.  [Arial] travels over to Walgreen’s
where he meets Bruce Spruill and hands over to him the drugs, that almost 2
grams of methamphetamine in the cellophane wrapper that has been admitted and
described for you.

 

       Now, Mr.
Arial was searched before this began.  The car was new.  It was searched.  He
was searched.  No drugs found.  Where in the world did the drugs come from if
they didn’t come from [appellant] as Mr. Arial says?  Did he go to somebody on
the street corner, buy some drugs?  Would that make sense?  Of course not.  Okay? 
It’s as simple as that.

 

Evidence as to
whether Arial obtained the methamphetamine after leaving appellant’s presence would
not be provided through the testimony of appellant because appellant would not
know what Arial did after leaving his presence.  Therefore, no relationship existed
between the complained-of statement by the prosecutor and appellant’s failure
to testify.  We conclude that the prosecutor’s statement was not manifestly
intended to be, nor was of such character that a typical jury would naturally
and necessarily take it to be, a comment on the defendant’s failure to
testify.  Cruz, 225 S.W.3d at 548.  As such, the statement did not
constitute an impermissible comment on appellant’s failure to testify.  

            After
appellant objected to the prosecutor’s statement at trial, the trial court
stated as follows:

I will overrule the
objection, but will emphasize, once again, ladies and gentlemen of the jury,
and admonish all counsel that everybody in a criminal case who is accused of a
crime has an absolute constitutional right not to testify.  It cannot be held
against them in any way.  You cannot comment on it or allude to it, period.

   

Even if the
prosecutor’s statement constituted a comment on appellant’s failure to testify,
the trial court’s instruction to the jury cured any harm caused by the
statement.  Moore v. State, 999 S.W.2d 385, 405-06 (Tex. Crim. App.
1999) (Except in the most blatant cases, an instruction to disregard a comment
on the defendant’s failure to testify will cure any harm caused by the
comment.). 

            During
jury argument in the punishment phase, the prosecutor commented on appellant’s
work history.  The following exchange took place:

       [PROSECUTOR]:
Of all the evidence that was presented, the only evidence of his workmanship,
the ability to work in a legitimate job was that possibly sometime in 2006, he
worked --

 

      [DEFENSE
COUNSEL]: I object.  It’s a comment on the failure [of] the Defendant to
testify and give forth that evidence.

 

      THE COURT:
Overruled.

 

      [PROSECUTOR]:
That he worked for a period of 2000, 2006 hanging some wallpaper.  Other than
that, the only evidence you have is that he sold drugs, distributed drugs for a
living.

 

      [DEFENSE
COUNSEL]: Judge, same objection.

 

      THE COURT:
Overruled.

 

In the above argument,
the prosecutor was referring to testimony by appellant’s family members about
his employment history.  Appellant contends that the prosecutor’s statements
commented on his failure to testify because they called attention to testimony
that only he could provide.  However, any number of individuals, including
former employers, coworkers, family members, or acquaintances, could have
provided testimony about appellant’s employment history.  The prosecutor’s
statements were not a comment on appellant’s failure to testify.  Appellant’s
fifth issue is overruled.

Evidence
of Extraneous Offense

            In
his sixth issue, appellant asserts that, in the guilt/innocence phase, the
trial court erred in admitting evidence of extraneous conduct involving his
delivery of drugs to Sady Huro.   Gonzales testified about conversations he had
with appellant when they were cellmates.  Gonzales said that appellant told him
that, on the day he was arrested, he had brought between thirty-four and forty
grams of methamphetamine into town.  Appellant also told Gonzales that he had
planned to drop off the methamphetamine to a lady named Sady.  According to
Gonzales, appellant made it clear that Sady was his customer.  Gonzales also
said that appellant told him that he had dropped off drugs to Sady a couple of
weeks before he was arrested.

            Appellant
did not object to Gonzales’s testimony about his delivery of drugs to Sady
Huro.  To preserve error for appellate review, the complaining party must make
a timely, specific objection in the trial court and obtain a ruling on the
objection.  Tex. R. App. P.
33.1(a); Wilson v. State, 71 S.W.3d 346, 349 (Tex. Crim. App.
2002); Broxton v. State, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995).  Appellant
did not preserve the alleged error for review.

            Additionally,
even if appellant had objected to Gonzales’s testimony at trial, the trial
court would not have abused its discretion in allowing the testimony.  Gonzales
testified about one extraneous offense in the portion of the record cited by appellant
in his brief.  Specifically, Gonzales testified that appellant told him that he
had delivered drugs to Sady Huro a couple of weeks before his arrest.  Rule
404(b) of the Rules of Evidence provides that evidence of extraneous offenses is
not admissible “to prove the character of a person in order to show action in
conformity therewith.”  Tex. R. Evid.
404(b).  However, Rule 404(b) allows evidence of extraneous offenses if the
evidence has relevance apart from character conformity.  For example, extraneous
offense evidence may be admissible to prove motive, opportunity, intent,
preparation, plan, knowledge, identity, or absence of mistake or accident.  Rule
404(b); Prible v. State, 175 S.W.3d 724, 731 (Tex. Crim. App. 2005); Carter
v. State, 145 S.W.3d 702, 707 (Tex. App.— Dallas 2004, pet. ref’d). 
Evidence that appellant had delivered drugs to Sady Huro about two weeks before
his arrest was relevant to show that, on the date of his arrest, he possessed
the methamphetamine with the intent to deliver.  See Payton v. State,
830 S.W.2d 722, 730 (Tex. App.—Houston [14th Dist.] 1992, no pet.) (Evidence
that the defendant sold drugs two days before his arrest was relevant to
whether he possessed drugs with intent to deliver).  Therefore, the extraneous
offense evidence was admissible.  Appellant’s sixth issue is overruled.

This
Court’s Ruling

            The
judgment of the trial court is affirmed.

 

 

                                                                                                TERRY
McCALL

                                                                                                JUSTICE        
                    

                        

May 20, 2010

Publish.  See
Tex. R. App. P. 47.2(b).

Panel consists of:  Wright, C.J.,

McCall, J., and Strange, J.